UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JOSEPH TACOPINA,

       Plaintiff/Counterclaim-Defendant,

 -v-                                                        No. 14CV749-LTS-FM

BERNARD KERIK,

       Defendant/Counterclaim-Plaintiff.

-------------------------------------------------------------x

BERNARD KERIK,

       Third-Party Plaintiff,

 -v-

JUDD BURSTEIN,

       Third-Party Defendant.

-------------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiff/Counterclaim-Defendant Joseph Tacopina ("Tacopina") and Third-Party Defendant Judd Burstein ("Burstein") bring the instant motion seeking dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), of Defendant/Counter-Claim Plaintiff/Third-Party Plaintiff Bernard Kerik's ("Kerik") counterclaims and third-party complaint in this action. On February 5, 2014, Tacopina filed the initial complaint in this case, asserting a claim of defamation against Kerik.[1] (Docket Entry No. 1.) Tacopina filed an amended complaint on

---

[1] The initial complaint also asserted claims against The New York Daily News and two reporters, which were ultimately withdrawn. (See Docket Entry No. 1.)

March 16, 2015.  (Docket Entry No. 53.)  On April 6, 2015, Kerik filed an answer and counterclaims against Tacopina and Tacopina's attorney, Judd Burstein, asserting a claim of defamation as well as a claim that Tacopina and Burstein violated New York Judiciary Law § 487.  (Docket Entry No. 62).  On April 16, 2015, Tacopina and Burstein moved to dismiss Kerik's counterclaims (Docket Entry No. 65), and Kerik thereafter filed amended counterclaims (the "Amended Counterclaims" or "Am. CC") on April 29, 2015.[2]  (Docket Entry No. 69.)

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.  The Court has carefully considered the parties' submissions and, for the reasons stated below, Tacopina and Burstein's motion is granted in its entirety.

## BACKGROUND[3]

Bernard Kerik served as New York City's 40th Police Commissioner, rising to national prominence following the terrorist attacks of September 11, 2001.  (Am. CC ¶ 5.)  Following his retirement from the NYPD, he was appointed as the Interim Minister of Interior of Iraq by President George W. Bush.  (Id. ¶ 6.)  In this position, Kerik was tasked with rebuilding the Iraqi Interior Ministry, which oversaw the country's national police and intelligence services.  (Id.)  On December 3, 2004, Kerik was nominated by President Bush to be the United States Secretary of Homeland Security.  (Id. ¶ 7.)  In preparing to be vetted for the position, Kerik

---

[2] Although Tacopina and Burstein interposed their motion practice prior to Kerik filing his Amended Counterclaims, the parties have stipulated that Tacopina and Burstein's motion to dismiss should be deemed a motion to dismiss Kerik's Amended Counterclaims.  (See Docket Entry No. 70.)  The Amended Counterclaims also assert claims of defamation and violation of New York Judiciary Law § 487.

[3] The facts stated herein are drawn from the Amended Counterclaims and are assumed to be true for the purposes of this motion practice.

discovered that a woman whom he had previously employed as a nanny was likely in the country illegally. (Am. CC ¶ 8.) Out of concern that this information could prompt a political firestorm, because his duties as Secretary of Homeland Security would include oversight of U.S. Customs and Immigration, Kerik withdrew his name from consideration for the position. (Id.)

Kerik thereafter came under investigation by the New York City Department of Investigations and the Bronx County District Attorney's Office. (Id. ¶ 9.) Kerik was represented by Tacopina in these investigations as well as in the state court proceedings that followed (the "Bronx Case"). (Id.) As part of the Bronx Case, investigators examined renovations that Kerik had made to his apartment in Riverdale, and looked into whether Kerik had accepted those renovations as part of an improper quid pro quo deal. (Id. ¶ 10.) Following Tacopina's advice, Kerik pleaded guilty to two misdemeanor ethics violations – failing to document a personal loan on a city financial disclosure and accepting a gift of renovations. (Id. ¶ 11.) He paid $221,000 in fines and penalties. (Id.) Kerik alleges that Tacopina failed to properly advise him of the potential consequences of his plea, and that Tacopina misrepresented the tax implications, despite Kerik's specific questions and concerns. (Id.)

Shortly after the conclusion of the Bronx Case, Kerik came under federal investigation for failing to pay taxes on the renovations. (Id. ¶ 12.) On March 12, 2007, federal prosecutors subpoenaed Tacopina's financial records, and Tacopina himself came under investigation. (Id. ¶ 13.) Tacopina was thus conflicted out of further representation of Kerik. (Id.) Tacopina thereafter became a cooperating witness against Kerik, engaging in multiple proffer sessions in which he provided the U.S. Attorney with information to assist in the prosecution of Kerik. (Id. ¶ 14.) Ultimately, Kerik pleaded guilty to: failing to list his daughter's nanny or the renovations on his tax filings; failing to disclose on his mortgage

application that he had borrowed money from a friend to make a down payment on an apartment; and failing to inform White House officials of these issues as he was being vetted for the Homeland Security position.  (Am. CC ¶ 15.)  He was sentenced to four years in federal prison.  (Id.)

On December 18, 2013, Kerik filed a disciplinary complaint (the "Disciplinary Complaint") against Tacopina, accusing Tacopina of betraying him by, inter alia, cooperating with federal prosecutors and failing to properly advise him with respect to the Bronx Case.  (Id. ¶ 18.)  Kerik provided a copy of the Disciplinary Complaint to reporters from the New York Daily News, who proceeded to publish an article about the Disciplinary Complaint.  (Id. ¶ 19.)  In response, Tacopina hired Judd Burstein to represent him (id. ¶ 20), and Burstein proceeded to file a complaint against Kerik in New York County Supreme Court on January 27, 2014.  (Id. ¶ 26.)  Kerik alleges that the filing of that case marked the "beginning of Tacopina and Burstein's overt campaign to defame Kerik and falsely paint him as an individual who has an 'allergy to the truth.'"  (Id. ¶ 28.)  Tacopina and Burstein withdrew the New York County complaint on February 5, 2014, and on the same day filed the initial complaint in this action.  (Id. ¶ 31.)  In the complaint, which asserted a claim for defamation against Kerik, Tacopina and Burstein identified two specific defamatory statements that Kerik had allegedly made in the Disciplinary Complaint: (1) Kerik's statement that Tacopina had disclosed privileged information to the U.S. Attorney's Office; and (2) Kerik's statement that Tacopina had failed to disclose that he had been subpoenaed by the U.S. Attorney's Office.  (Id. ¶ 33; see also Docket Entry No. 1 ¶¶ 53, 61.)  Kerik alleges that these two statements were "wholly invented by Tacopina and Burstein in an effort to intentionally deceive the Court and create a defamation

case that would permit them to defame Kerik." (Am. CC ¶ 34.)[4]

On March 16, 2015, Burstein and Tacopina filed their amended complaint (see Docket Entry No. 53), which Kerik alleges Tacopina and Burstein know is a false document. (Am. CC ¶ 40.) The amended complaint withdrew the allegation that Kerik had defamed Tacopina in the Disciplinary Complaint by stating that Tacopina had failed to disclose that he had been subpoenaed by the U.S. Attorney's Office, but continued to assert that Kerik defamed Tacopina by alleging that he had disclosed privileged information to the U.S. Attorney's Office. (Id. ¶ 40; see also Docket Entry No. 53 ¶ 16.) Kerik maintains that "[n]owhere in the Disciplinary Complaint d[id] Kerik allege that Tacopina violated attorney-client privilege," and claims that all three complaints filed by Tacopina and Burstein (the state court complaint, and the two complaints in the instant action) "were maliciously filed for the sole purpose of defaming Kerik." (Am. CC ¶¶ 42-43.)

In his Amended Counterclaims, Kerik alleges that he is the principal of The Kerik Group, LLC, a risk management consulting firm (id. ¶ 45), and that he is a New York Times best-selling author who recently released a book entitled From Jailer to Jailed, which is part autobiography and part political commentary. (Id. ¶ 47.) Kerik also claims that, despite his tax fraud conviction, his opinions are widely respected, and he is frequently called upon to testify before congressional committees and advise elected officials on issues related to criminal justice reform. (Id. ¶ 46.) Kerik asserts that the "false amended complaint" filed against him has exposed him to "public contempt, ridicule, aversion or disgrace," and that it has caused him

---

[4] Kerik contends that the Disciplinary Complaint alleged that Tacopina had revealed Kerik's confidential "secrets" rather than privileged attorney-client communications. (Am. CC ¶ 39.)

damages "by virtue of his loss of reputation, shame" and, most importantly, that he has been injured in his "business, trade, profession and/or occupation." (Am. CC ¶¶ 48, 51-52.) In this connection, Kerik alleges that Burstein and Tacopina's statements that Kerik made knowingly false statements in the Disciplinary Complaint constitute defamation per se, because such statements "tend[] to injure Kerik in his profession by calling into question the Kerik's [sic] competence to perform adequately in his professions," to which Kerik's "credibility is paramount." (Id. ¶ 53.)

Kerik further claims that Tacopina and Burstein have violated New York Judiciary Law § 487, which provides for an award of treble damages to any party injured by an attorney engaging in purposefully deceitful tactics before the court. (See id. ¶ 57.)[5] In this connection, Kerik claims that Tacopina and Burstein colluded to file multiple sham lawsuits against him in order to defame him (id. ¶ 59), that they intentionally attempted to deceive the Supreme Court of New York State, New York County as well as the United States District Court for the Southern District of New York (id. ¶ 60), that their conduct constituted a chronic and extreme pattern of legal delinquency in violation of New York Judiciary Law § 487 (id. ¶ 63), and that Kerik is entitled to recover from Burstein and Tacopina treble the expenses of defending this litigation as well as punitive damages to be determined at trial. (Id. ¶¶ 65-67.) Tacopina and Burstein have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss each of these counterclaims. (See Docket Entry No. 65.)

---

5 Although Kerik concedes that Tacopina was named as a client in this action, Kerik claims that Tacopina "was acting as an attorney and is therefore subject to the provisions of Judiciary Law § 487." (Am. CC ¶ 59.) Both Tacopina and Burstein are licensed attorneys in New York and thus are subject to the provisions of Judiciary Law § 487. (Id. ¶ 58.)

D<small>ISCUSSION</small>

"A motion to dismiss counterclaims under Rule 12(b)(6) is decided under the same standard applied to a motion to dismiss the claims of a complaint." <u>Precision LLC v. Duro Textiles, LLC</u>, No. 15CV1681-DLC, 2015 WL 3751658, at *9 (S.D.N.Y. June 15, 2015) (quoting <u>Raine v. Paramount Pictures Corp.</u>, No. 97CV3553-DLC, 1998 WL 655545, at *5 (S.D.N.Y. Sept. 24, 1998)).  When deciding a motion to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), the court accepts all factual allegations contained within the complaint as true and draws all reasonable inferences in favor of the Plaintiff.  <u>See</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71 (2d Cir. 2009).  In order to survive a motion to dismiss, "a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the [counterclaim-]plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-]defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).  If the counterclaim-plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  <u>Twombly</u>, 550 U.S. at 570.  Courts will not "accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Iqbal</u>, 556 U.S. at 678.  In making its Rule 12(b)(6) determinations, the Court "may consider any written instrument attached to the [counterclaim], statements or documents incorporated into the [counterclaim] by reference . . . and documents possessed by or known to the [counterclaim-] plaintiff and upon which [he] relied in bringing the suit." <u>ATSI Communications, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98

(2d Cir. 2007).

Kerik's Defamation Counterclaim

    To establish a claim for defamation under New York law, a plaintiff is required to demonstrate four elements: "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through the fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" Makinen v. City of New York, 53 F. Supp. 3d 676, 700 (S.D.N.Y. 2014) (citing Boehner v. Heise, 734 F. Supp. 2d 389, 397-98 (S.D.N.Y.2010)).  Special damages "consist of the 'loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation,'" Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 179 (2d Cir. 2000) (quoting Matherson v. Marchello, 100 A.D.2d 233, 235 (N.Y. App. Div. 2d Dep't 1984)), and the Federal Rules of Civil Procedure require that special damages be "specifically stated." See Fed. R. Civ. P. 9(g).  Here, Kerik has not pleaded any special damages, and he specifically argues that Tacopina and Burstein's statements constitute defamation per se.  (See Am. CC ¶¶ 44-55.)  The New York Court of Appeals has recognized four categories of statements as defamatory per se: (1) those that accuse the plaintiff of a serious crime; (2) those that tend to injure another in his or her trade, business or profession; (3) those that accuse the plaintiff of having a loathsome disease; and (4) those that impute unchastity to a woman.  See Lieberman v. Gelstein, 80 N.Y.2d 429, 435 (1992).  "Determining whether a statement is defamatory per se is a question of law for the Court." Stern v. Cosby, 645 F. Supp. 2d 258, 288 (S.D.N.Y. 2009).

    Kerik has alleged that Tacopina and Burstein's "false" complaints have injured

him professionally, implicating only the third category of defamatory per se statements recognized by the New York Court of Appeals.  (See Am. CC ¶¶ 52-53.)  "To find that a statement qualifies as one that tends to injure another in his or her 'trade, business, or profession,' the statement 'must be made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities.'"  See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (alteration in original) (quoting Lieberman, 80 N.Y.2d at 436).  The allegedly defamatory statement must be targeted at specific standards of performance that are directly relevant to the plaintiff's business, and must impute conduct that is "of a kind incompatible with the proper conduct of the business, trade, profession or office itself."  See Pure Power Boot Camp, 813 F. Supp. 2d at 550 (quoting Lieberman, 80 N.Y.2d at 436); see also Van-Go Transp. Co. Inc. v. New York City Board of Education, 971 F. Supp. 90, 98 (E.D.N.Y. 1997) ("Reputational injury to a person's business, or to a company, consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties.").

    Kerik's Amended Counterclaims assert that the allegedly false statement made by Tacopina and Burstein – that in his Disciplinary Complaint Kerik falsely claimed that Tacopina divulged privileged information to the United States Attorney's Office – imputes to Kerik a character of untrustworthiness and lack of credibility.  (See Am. CC ¶ 53.)  Kerik claims that this statement "call[s] into question the Kerik's [sic] competence to adequately perform his professions," because "[a]s a consultant, commentator or writer, credibility is paramount."  (Id.)  Morever, he claims that Tacopina and Burstein's actions "were specifically directed at undermining [the] progress" that Kerik had made in overcoming "the public stigma of his prior

conviction to regain respect and trust." (Am. CC ¶ 53.) For these reasons, Kerik argues, Tacopina and Burstein's actions amount to defamation per se.

The allegedly false statement made by Tacopina and Burstein simply is not "targeted at the specific standards of performance relevant to" Kerik's businesses. As the Second Circuit has recognized, "it is actionable without proof of damage to say of a physician that he is a butcher . . . of an attorney that he is a shyster . . . of a public officer that he has accepted a bribe or has used his office for corrupt purposes . . . since these things discredit [one] in his chosen calling." Celle, 209 F.3d at 180 (quoting Prosser and Keeton on the Law of Torts, § 112, at 791 (5th Ed. 1984)). However, New York courts have held that it is not the case that "any words spoken to the disparagement of a professional man will ipso facto be actionable per se . . . It is not sufficient that [such words] tend to injure plaintiff in his business, they must have been spoken of him in his business." Gurtler v. Union Parts Mfg. Co., Inc., 285 A.D. 643, 646 (N.Y. App. Div. 1st Dep't 1955) (emphasis added). It simply is not the case that, as a matter of law, the allegedly false statement made by Tacopina and Burstein tends to specifically discredit Kerik as an author or a consultant, and this statement was clearly not "spoken of [Kerik] in his business." If anything, the Amended Complaint merely claims (falsely, according to Kerik) that Kerik's Disciplinary Complaint accused Tacopina of disclosing privileged information to federal prosecutors when, supposedly, Kerik only accused Tacopina of having revealed non-privileged information. This is not enough to meet the standard of defamation per se within the injury to business or profession context.[6] Moreover, Kerik concedes that he has been convicted of both

---

[6] Furthermore, Kerik has submitted a sworn affidavit with his Amended Counterclaims in which he concedes that he is "not an attorney and do[es] not understand the intricacies of attorney-client privilege." (See Docket Entry No. 69, Ex. F.) This admission undercuts Kerik's argument that Tacopina and Burstein have defamed him, as it suggests that it is not apparent to Kerik himself that their

tax fraud and making false statements to federal officials vetting him for the Department of Homeland Security position. (See Am. CC ¶ 15.) The Court thus does not find plausible Kerik's contention that Tacopina and Burstein's statement may further erode public perception of his credibility.

In light of the foregoing, the Court finds that Kerik has failed to state a facially plausible claim for defamation per se. Accordingly, Tacopina and Burstein's motion to dismiss the defamation counterclaim is granted.

Kerik's Judiciary Law § 487 Counterclaim

"Judiciary Law § 487 provides, inter alia, that an attorney who is 'guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . forfeits to the party injured treble damages, to be recovered in a civil action.'" See Schindler v. Issler & Schrage, 262 A.D.2d 226, 228 (N.Y. App. Div. 1st Dep't 1999) (quoting N.Y. Jud. Law § 487 (McKinney 2015)). Kerik alleges that Tacopina and Burstein "colluded to file . . . sham lawsuits, not to further any legitimate litigation goal, but rather to defame Tacopina's accuser and delay proceedings before the Departmental Disciplinary Committee for the 1st Judicial Department and thereby preserve Tacopina's license to practice law, or at least delay his anticipated suspension or disbarment," thereby violating Section 487. (See Am CC. ¶¶ 59, 62(a),(b),(d).) Kerik further claims that Tacopina and Burstein filed a letter with this Court that "intentionally misrepresented a prior decision by Judge Robinson, as well as the applicable case law in an effort to avoid discovery, which would reveal the falsity of the

---

allegedly defamatory statement was false as required by New York law. See Maniken, 53 F. Supp. 3d at 700.

complaint and fraudulently obtain a judgment." (Am. CC ¶ 62(c).) According to Kerik, these actions constitute "a chronic and extreme pattern of legal delinquency in violation of Judiciary Law § 487." (Id. ¶ 63.)

As an initial matter, the Court finds that Kerik cannot, as a matter of law, maintain a Section 487 claim as against Tacopina. Courts in this district have recognized that "Section 487 is aimed at actions by an attorney in his or her role as an attorney. The mere fact that a wrongdoer is an attorney is insufficient to impose liability for treble damages under Section 487." See Northern Trust Bank of Florida/Sarasota N.A. v. Coleman, 632 F. Supp. 648, 650 (S.D.N.Y. 1986) (emphasis in original); see also Barrows v. Alexander, 78 A.D.3d 1693, 1693 ("Section 487 applies only to an attorney acting in his or her capacity as an attorney, not to a party who is represented by counsel and who, incidentally, is an attorney") (internal quotation marks and citation omitted). Here, it is clear that Tacopina was not acting "in his . . . capacity as an attorney" when he filed suit against Kerik, his former client. Kerik's allegation that "[a]lthough Tacopina was named as a client in these actions, he was acting as an attorney and is therefore subject to the provisions of Judiciary Law § 487" (Am. CC ¶ 59) is purely conclusory, and Kerik cites no case law in support of a valid Section 487 claim as against Tacopina. (See Docket Entry No. 71, Kerik's Memorandum of Law in Opposition to Motion to Dismiss, at pp. 9-10). Thus, because it is clear that Tacopina was not acting in his capacity as an attorney when initiating this suit, Kerik cannot maintain a Section 487 claim against him. See Yak v. Bank Brussels Lambert, No. 99CV12090-JGK, 2002 WL 31132963, at *7 (S.D.N.Y. Sept. 26, 2003) ("in filing this lawsuit the plaintiff was not acting in her capacity as an attorney. She was acting in her capacity as a party . . . She was represented by counsel and not acting as a lawyer . . . The mere fact that she is an attorney does not mean that she acted in her capacity as a legal

representative for the purposes of § 487 liability. The defendants have failed to state a claim under Section 487, and their counterclaim is dismissed.").

The Court also finds that Kerik has failed to allege facts supporting his claim that Burstein has committed a violation of Section 487. Courts within this district have recognized that "New York Courts limit the application of § 487 to claims that the delinquent attorney has intentionally 'engaged in a chronic, extreme pattern of legal delinquency.'" See O'Callaghan v. Sifre, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008) (emphasis added) (quoting Schindler, 262 A.D.2d at 228).[7] Furthermore,

> By confining the reach of the statute to intentional egregious misconduct, this rigorous standard affords attorneys wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy, this excluding from liability statements to a court that fall well within the bounds of the adversarial proceeding . . . Under this threshold, an action grounded essentially on claims that an attorney made meritless or unfounded allegations in . . . court proceedings would not be sufficient to make out a violation of § 487.

O'Callaghan, 537 F. Supp. 2d at 596. Kerik has alleged no facts that tend to indicate that Burstein intentionally worked to mislead the Court. While Burstein's letters to the Court with respect to proposed summary judgment motion practice were premised on legal arguments that the Court ultimately rejected (see Docket Entry Nos. 38, 43), they are more fairly characterized as "responsible, vigorous advocacy" than "intentional egregious misconduct."

Nor do the various complaints filed by Burstein against Kerik meet the level of misconduct necessary to maintain a Section 487 claim. Kerik points to no facts beyond his own

---

[7] The Second Circuit has recognized that there is no statutory requirement that the accused attorney engage in a "pattern" of deceitful conduct, noting that some courts "have found attorneys liable under the statute for a single intentionally deceitful or collusive act." See Amalfitano v. Rosenberg, 533 F.3d 117, 123 (2d Cir. 2008).

conclusory assertions that the allegations contained in these complaints are false. Furthermore, an "[a]ssertion of unfounded allegations in a pleading, even if made for improper purposes, does not provide a basis for liability" under Section 487. See Ticketmaster Corp. v. Lidsky, 245 A.D.2d 142, 143 (N.Y. App. Div. 1st Dep't 1997). Thus, even if Kerik were able to assert facts demonstrating that the allegations of defamation against him are "unfounded," he still would not have a sufficient basis for a Section 487 claim stemming from the complaints filed by Burstein.[8] Moreover, the fact that Burstein has opted to pursue a different legal strategy in federal court than that indicated in the state court complaint (See Docket Entry Nos. 53, 69, Ex. 2) is not necessarily indicative of deceitful intent. See e.g., Rosco, Inc. v. Mirror Lite Co., No. 96CV5658-CPS, 2009 WL 3587344, at *5 (E.D.N.Y. Oct. 26, 2009) (recognizing that a change in legal strategy is not necessarily indicative of bad faith.) Because Kerik's Section 487 claim against Burstein is premised on nothing more than "mere conclusory statements," Iqbal, 556 U.S. at 678, with respect to Burstein's attempts to deceive this Court, Kerik has failed to state a claim upon which relief may be granted, and Tacopina and Burstein's motion to dismiss his Judiciary Law § 487 claim is granted.

---

[8] As Tacopina and Burstein point out, the fact that the original complaint in this action contained allegations against The New York Daily News and two reporters (see Docket Entry No. 1) that were withdrawn upon Tacopina's conclusion that they lacked merit demonstrates an attempt by Burstein to litigate this case in good faith and represents the opposite of deceitful conduct on his part.

CONCLUSION

For the foregoing reasons, Tacopina and Burstein's motion to dismiss Kerik's counterclaims is granted and Burstein is dismissed as a third-party defendant. This Memorandum Opinion and Order resolves Docket Entry Number 65.

The final pretrial conference in this matter remains scheduled for **Friday, October 21, 2016, at 10:30 a.m.** The parties must consult and make their submissions in advance of the conference as required by the Pre-trial Scheduling Order. (Docket Entry No. 49.)

This case remains referred to Magistrate Judge Frank Maas for general pretrial management.

SO ORDERED.

Dated: New York, New York
March 31, 2016

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge